## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **LISA RENEE SKELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **7:16-cv-00101-AKK** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Lisa Renee Skelton brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Skelton filed her application for Title II and Part A of Title XVIII Disability Insurance Benefits, Title XVI Supplemental Benefits, and Title XIX Medical Assistance, on August 9, 2012, alleging a disability onset date of May 31, 2010,

due to severe impairments resulting from a Lisfranc injury to her right foot. (R. 128–154). After the SSA denied her application, (R. 85–87), Skelton requested a hearing before an ALJ. (R. 92–93). The ALJ subsequently denied Skelton's claim, (R. 16–33), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–3). Skelton then filed this action pursuant to § 405(g).

## II. Standard of Review

The issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)–(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)–(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Skelton met the criteria for Step One, because she had not engaged in any substantial gainful activity since her alleged onset date in May 2010. (R. 23). Next, the ALJ acknowledged that Skelton's impairments of "a Lisfranc injury to the right foot, degenerative joint disease of the hindfoot and naviculo-cuneiform articulation, history of bilateral clubfeet, and obesity" met the requirements of Step Two. (R. 23–27). The ALJ then proceeded to the next step and found that Skelton

did not satisfy Step Three, because she did "not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 27) (internal citations omitted). In this step, the ALJ considered Section 1.02

> for major dysfunction of a joint(s) (due to any cause) which is characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

(R. 27). Ultimately, however, the ALJ concluded that "[t]he evidence of record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet or equal any of Section 1.02." (R. 28). Moreover, the ALJ noted that "there are no opinions in the record from medical experts or any other type of medical or psychological consultants, who have been designated by the Commissioner, which indicate that the claimant's impairments, alone or in combination, meet or equal a Section 1.02." (R. 28).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at her date last insured, Skelton had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a), which allows her to stand or walk for 5 to 10 minutes at one time and sit for 30

minutes at one time." (R. 28). The ALJ further added that "[Skelton] is restricted to no climbing; no right foot control or operations; no uneven terrain; and a temperature-controlled environment." (R. 28). In light of Skelton's RFC and the testimony of a vocational expert ("VE"), the ALJ determined that Skelton was unable to perform any of her past relevant work. (R. 31). Lastly, in Step Five, the ALJ considered Skelton's age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Skelton] can perform." (R. 32). Therefore, the ALJ found that Skelton "has not been under a disability, as defined in the Social Security Act, from May 31, 2010." (R. 33).

## V. Analysis

Skelton raises multiple contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

### 1. The ALJ Did Not Err By Purportedly Failing To Give Weight To The Opinion Of The Treating Physician In The RFC

Skelton's first contention of error is that the ALJ failed to afford proper weight to Dr. Angus McBryde's opinion that Skelton is restricted to sedentary work in determining Skelton's RFC. Doc. 7 at 5–10. Skelton is correct that the opinion of a treating physician must generally be afforded substantial weight. Doc. 7 at 7; *see Wiggins v. Schweiker*, 679 F.2d 1387, 1389–90 (11th Cir. 1982). However, the ALJ is permitted to disregard a treating physician's opinion when:

"(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records . . ." *Phillips v. Barnhardt,* 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). This was precisely the case here.

As the ALJ explained, Dr. McBryde's opinions were inconsistent with his treating record:

> Partial weight is accorded to the opinions offered by Dr. McBryde. According to his medical source statement, the claimant could perform sedentary work. I agree with such finding. However, Dr. McBryde's opinions are inconsistent with his treating record. I find that Dr. McBryde's assertion that the claimant has to elevate her to [sic] foot to the level provided in the statement as not credible and based on the claimant's subjective complaints. Dr. McBryde made no indication or recommendation that the claimant has to elevate her foot for any period of time while administering medical care.

(R. 31). Upon review of the record, the court agrees. In Dr. McBryde's "Statement of a Treating Physician," (R. 329), he indicates that Skelton, when sitting for any period of time, must elevate her leg above her head, and that in an 8-hour workday, Skelton is limited to standing or walking for less than two hours and sitting for about four hours. (R. 329). However, the record indicates that Dr. McBryde only instructed Skelton to keep her leg raised as a post-operative precaution in the days and weeks immediately following Skelton's 2011 and 2012 surgeries. *See* (R. 481) ("she will get home today and get this up in the air, she has her leg elevator"); (R.

485) (Skelton remained at the hospital overnight post-surgery and "[a] leg elevator was used"); (R. 502) (two weeks post-surgery, "[a] short leg cast is now brought up to 90 degrees and with a toes plate . . . . We want to keep [Skelton] at right angles"). Significantly, during follow-up visits, Dr. McBryde did not instruct Skelton to continue elevating her leg. *See* (R. 476, 478–80, 505, 508–10, 520). Indeed, in August 2012, Dr. McBryde reported, "her leg based activities should be only for activities of daily living with a little bit of walking. She cannot work or stand on hard floors. She needs accommodative shoeing for both cushion and control for the most part." (R. 476). There was no indication that Skelton should keep her foot raised at any level while seated or following any kind of walking or standing in this entry, or in another entry later that same month when Dr. McBryde recorded that Skelton "has now plateaued from her surgery," and that he recommended "fine tuning with her orthoses [inserts]" and "pool therapy" to help "stretch the Achilles." (R. 478).

Contrary to Skelton's contentions, the ALJ complied with the law by discussing the inconsistencies between Dr. McBryde's treatment records and the medical opinion before ultimately articulating the reasons why he afforded partial weight to Dr. McBryde's opinion. *See Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 534 (11th Cir. 2014) (no error where the ALJ "articulated with particularity the weight he gave to all of the physician assessments in the medical

record" and substantial evidence supported the ALJ's weighing of the opinion evidence). Based on the court's review of the record, this determination is consistent with the medical record in evidence.

Second, Skelton argues that the ALJ "cannot substitute his judgment for that of the medical experts," and that the ALJ "impermissibly succumbed to the temptation of playing doctor" by giving partial weight to Dr. McBryde's opinion. Doc. 7 at 8, 10. To support this contention, Skelton argues that the ALJ provided no rationale for rejecting Dr. McBryde's opinion as to the severity of Skelton's pain and its impact on her ability to sustain attention and concentration, including purportedly needing to miss at least three days of work per month. *Id.* at 10. However, the record belies this contention. Indeed, the ALJ agreed with Dr. McBryde's recommendation regarding sedentary work. (R. 31). Moreover, in accordance with 20 C.F.R § 404.1567(a), the ALJ limited Skelton to standing or walking for 5 to 10 minutes at one time, and to sitting for 30 minutes at one time. The ALJ further limited Skelton's activity by restricting her to "no climbing; no right foot control or operations; no uneven terrain; and a temperature-controlled environment." (R. 28). Significantly, consistent with the law, the ALJ's RFC determination is based on the substantial evidence, including (1) the treatment notes from various doctors (Dr. Russell Clinton, (R. 205–07, 566–73), Dr. William Carter Standeffer, Jr., (R. 212–30, 309–13, 425–37, 583–90), and Dr. William

Krauss, (R. 466–72, 595–96)), (2) a Radiology Report, (R. 414–15), (3) a Report of Operation from Dr. Chad S. Altmyer, (R. 416–18, 577–79), (4) treatment notes from two physical therapists, (R. 243–302, 350–409, 443–62), (5) a Consultative Examination Report by Dr. Raveendran Meleth (R. 317–21), (6) a case analysis from non-examining state agency consultant Dr. Marcia Turner, (R. 323–24), (7) the testimony of the vocational expert, (R. 64–73), and (8) Dr. McBryde's treatment notes and Statement of a Treating Physician, (R. 231–39, 314–16, 325–33, 438–40, 473–548). Put simply, the ALJ's decision to rely on the entire record,[1] rather than solely on Dr. McBryde, is not tantamount to "succumb[ing] to the temptation of playing doctor."

Third, Skelton argues that the ALJ erred by failing to contact Dr. McBryde to obtain clarifications about any perceived inconsistencies. Doc. 7 at 10. The ALJ has no obligation to contact a treating physician where, as here, the physician's notes adequately explained the treatment of the claimant, and the rest of the evidence also provided a clear record of the claimant's condition. *See Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (no error in failing to re-contact claimant's doctors or order a consultative exam where there was already sufficient

[1] The "determination of [the RFC] is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546).

information in the record); *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 831 (11th Cir. 2006) (rejecting argument when the physicians' opinions were not vague, the claimant's testimony was consistent with the physicians' findings, and there was sufficient medical evidence in the record). Significantly, here, the substantial evidence — including Dr. McBryde's own treatment notes, (R. 231–39, 314–16, 325–33, 438–40, 473–548), Physical Therapist Clary's treatment notes, (R. 243–302, 350–409), Dr. Meleth's Consultative Examination Report, (R. 317–21), and the evaluations by Skelton's other physicians — supports the ALJ's determination that Skelton could perform sedentary work. Therefore, the ALJ had no reason or obligation to contact Dr. McBryde.

In sum, the court finds that the ALJ did not err in affording Dr. McBryde's opinion partial weight.

### 2. The ALJ Properly Assessed The Effects of Skelton's Pain

Skelton next argues that the ALJ's rejection of Skelton's testimony regarding the effects of her pain on her daily activities is not supported by substantial evidence. Doc. 7 at 10–16. To establish a disability based on testimony of pain and other symptoms, Skelton must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v.*

11

*Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Moreover, if the "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Id.* (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

The ALJ did so here, explaining:

While [Skelton] has an impairment which could reasonably be expected to result in some pain and limitations, the documentary record does not substantiate the intensity, frequency, and restrictions alleged. For instance, when examined on August 11, 2011, 5 months after her third surgical procedure, Dr. McBryde noted that the claimant had some edema but that it would improve (Exhibit 17F). When examined by Dr. Standeffer on June 11, 2012, 6 months after her fourth surgical procedure, the claimant reported that her pain was only 4 out of 10 on a 10-point scale. She did not report experiencing any swelling, nor was any swelling observed during the examination. Moreover, it is significant that during the examination, the claimant's right foot had normal range of motion and x-rays showed no acute abnormality. (Exhibit 15F). Even with her continued post-operative treatment with Dr. McBryde, the claimant did not complain or report constant swelling or pain during her examinations and was treated conservatively with Celebrex and Flexor patches. It is also unclear whether the claimant used the orthotics as recommended by Dr. McBryde (Exhibit 16F).

Although the claimant may experience some difficulties in prolonged standing and walking, when consultatively examined, she was able to walk into the examination room without assistance even though Dr. Meleth noted that the claimant appeared to have some discomfort. Notably, the claimant did not use an assistive device. Her right ankle dorsiflexion measured zero degrees and plantar flexion measured zero degrees, both of which are considered normal. While the claimant may reasonably experience some limitations in prolonged walking, standing or using foot operations, such restrictions are not preclusive of the claimant's ability to engage in all work-related activities; particularly those performed primarily from a seated

position. I specifically determine as not entirely credible, the claimant's assertions of having to repeatedly elevate her feet above her heart throughout the day.

(R. 30). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009) (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). After all, "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Significantly, here, the ALJ adequately considered the relevant factors,[2] and noted various inconsistencies in Skelton's evidence that support the ALJ's finding that Skelton's subjective complaints of pain were not entirely credible. Thus, substantial evidence supported the ALJ's finding.

### 3. The ALJ Applied The Proper Legal Standards For Evaluating The Declaration of April Lane, Ph.D., A Licensed Professional Counselor

Skelton argues next that the ALJ erred by providing inadequate reasons for rejecting Dr. Lane's opinion, improperly assigning Dr. Lane's opinion "no weight" in evaluating Skelton's credibility,[3] and in determining the severity of Skelton's

---

[2] Pursuant to 20 C.F.R. § 404.1529(c)(3), "[w]hen evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Carman*, 352 F. App'x at 408.

[3] Skelton contends that the ALJ failed to take Dr. Lane's declaration into account when evaluating Skelton's credibility regarding her pain and its effects on her functionality. Doc. 7 at 21. However, because Dr. Lane is not an acceptable medical source, *see* 20 C.F.R. §§ 404.1502;

pain and its effect on her ability to function. Doc. 7 at 16–22. However, the ALJ provided adequate reasons and his decision to assign "no weight" to Dr. Lane's opinion is supported by substantial evidence.

Dr. Lane is a Licensed Professional Counselor, (R. 600), who met with Skelton for weekly and biweekly counseling sessions for approximately one year prior to making a declaration regarding Skelton's treatment. (R. 598–99). Skelton met with Dr. Lane to obtain help "with the symptoms of depression . . . due to the pain in her right leg, ankle, and foot, among other things." (R. 598). Notably, Dr. Lane declared that Skelton's chronic pain and depression "would preclude [her] ability to sustain concentration for at least two hours on a regular basis if she were placed in a full-time work setting," and "that the irritability from the combined effects of her pain and depression would cause [Skelton] to respond inappropriately to criticism or directions from supervisors or to routing changes in a work setting." (R. 598–99).

The ALJ afforded "no weight" to Dr. Lane's opinions, because, (1) as a licensed professional counselor, Dr. Lane is not an acceptable medical source, *see* 20 C.F.R. §§ 404.1502; 404.1513(a), (d), and (2) Skelton did not allege limitations

---

404.1513(a), (d); 416.913(a), and her statements were conclusory, *see Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014) (psychiatrist's opinions were entitled to minimal weight because they were not supported by objective findings or examination results, and did not explain in any detail the reasons for his opinions); *Phillips*, 357 F.3d at 1241 (good cause exists for not heeding a treating physician's opinions when they are conclusory), the ALJ was not required to do so.

resulting from depression. (R. 31). Although Skelton concedes that Dr. Lane is not an "acceptable medical source," she contends that the ALJ should have considered Dr. Lane's opinion, because Dr. Lane had "special knowledge of [Skelton] and may provide insight into the severity of the impairment(s) and how it affects [Skelton's] ability to function." Doc. 7 at 18–19 (citing SSR 06-03p). The court disagrees because, first, testimony from "other" sources regarding the severity of a purported medical impairment and its functional effects is only considered if an acceptable medical source has first found the existence of such an impairment. *See* SSR 06-03p ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose."); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (chiropractor "is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment"). Because no acceptable medical sources, including Skelton's treating physicians, diagnosed Skelton with depression, *see* (R. 205–07, 212–30, 309–13, 416–18, 425–37, 466–72, 566–73, 577–79, 583–90, 595–96), Dr. Lane's opinions as to any effects of depression on Skelton's functionality are irrelevant.

Second, Dr. Lane's statements are conclusory and unsupported by the record. For example, Dr. Lane's statement did not present any details about how

she reached her conclusions regarding Skelton's responses to stress and Skelton's capacity to concentrate. (R. 598–99). Moreover, a review of the medical evidence does not support Dr. Lane's conclusions. Indeed, Dr. McBryde even reported that Skelton is "motivated and focused with much competence." (R. 331). As such, Dr. Lane's records are entitled to no weight. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014) (psychiatrist's opinions were entitled to minimal weight because they were not supported by objective findings or examination results, and did not explain in any detail the reasons for his opinions); *see also Phillips*, 357 F.3d at 1241 (good cause exists for rejecting a treating physician's opinions when they are conclusory).

Alternatively, Skelton argues that the ALJ failed to develop the record regarding any mental effects of Skelton's injury and depression. Doc. 7 at 20–21. An ALJ has a duty to develop a full and fair record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984). The Social Security Act provides that "in any case where there is evidence which indicates the existence of a mental impairment," the Commissioner "may determine that the claimant is not under a disability" only if he has made "every reasonable effort" to obtain the opinion of "a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988) (citing 42 U.S.C. § 421(h)). A claimant's testimony, plus suggestions from

his treating physicians of a mental impairment, may trigger this statutory duty to obtain a consultative mental examination as set forth in 42 U.S.C. § 421(h).

There is no error here because the ALJ developed a full and fair record, and Skelton failed to show that she was eligible for benefits based on depression. Among other things, Skelton did not list depression as an effect of her injury or as a source of disability in her Disability Report–Form SSA-3368 (R. 153–64), or in her Function Report, (R. 176–86). Moreover, Skelton's physicians do not report depression as one of her ailments. (R. 205–07, 212–30, 309–13, 416–18, 425–37, 466–72, 566–73, 577–79, 583–90, 595–96). Indeed, at Skelton's administrative hearing, she did not mention feeling depressed and spoke strictly about her physical impairments and their effects on her daily activities. (R. 45–64). Put simply, aside from Dr. Lane's conclusory statements regarding Skelton's purported depression and any limiting effects thereof, the record contains no evidence of depression. Therefore, there is no error here because although "[t]he administrative law judge has a duty to develop the record where appropriate[, the ALJ] . . . is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram*, 496 F.3d at 1269.

## VI. Conclusion

Based on the foregoing, the court concludes that this case is due to be dismissed, because the ALJ's decision denying Skelton benefits is supported by substantial evidence. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 18th day of April, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE